2004 VT 91

**Richard KREMER, M.D. and Andrea Kremer v. LAWYERS TITLE INSURANCE CORP.**

[861 A.2d 1103]

No. 03-419

¶ 1. September 8, 2004. Plaintiffs, insureds, appeal an order of the superior court granting summary judgment for defendant insurer on plaintiffs' breach of an insurance contract claim. Plaintiffs contend the court erred in concluding that their title insurance was not triggered by what they allege to be a municipal permit violation, even though the town has not found or alleged any violation. We affirm.

¶ 2. As an initial matter, the significance of our ruling in this case is likely limited as the Legislature has declared, subsequent to the facts giving rise to this case, that no encumbrance on title results from failure to obtain a municipal land use permit, see 27 V.S.A. § 612(a), and that the statute eliminating such encumbrances is to be applied retroactively, 1999, No. 46, § 15(b). That legislation aside, however, in this unusual case where purchasers of real property contend that their own home was in violation of municipal septic regulations despite testimony of the town septic officer to the contrary, we find no permit violation as a matter of law, and thus no defect in title from which title insurance coverage could arise.*

---

* Plaintiffs contend that the trial court erred in applying 27 V.S.A. § 612(a) to this case. They concede that the statute expressly rejects *Bianchi v. Lorenz*, 166 Vt. 555, 560, 701 A.2d 1037, 1041 (1997), in which this Court held that an encumbrance exists when municipal records re-

¶ 3. The following facts are undisputed. On July 1, 1996, plaintiffs Richard and Andrea Kremer purchased a home in Norwich, Vermont. On the same day, they purchased a title insurance policy from defendant Lawyers Title Insurance Corporation ("Lawyers Title"). The policy insured against "[a]ny defect in or lien or encumbrance on the title" of the premises. The policy excluded from coverage defects in title arising from any zoning law violation except to the extent that "a notice of a defect . . . or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy."

¶ 4. In 1995, the previous owners, Charles and Jeanne Richards, made improvements to the house including the

---

veal property to be in violation of local zoning law. Nevertheless, they argue that a statute cannot retroactively abrogate common law rights according to 1 V.S.A. § 214(b), a statute governing the repeal of statutory provisions. 1 V.S.A. § 214(b)(2) ("The amendment or repeal of an act or statutory provision . . . shall not . . . [a]ffect any right, privilege, obligation or liability acquired, accrued or incurred prior to the effective date of the amendment or repeal."). Additionally, plaintiffs assert there was notice of the alleged defect in the town records pursuant to the "constructive notice" standard set forth by this Court in *New England Federal Credit Union v. Stewart Title Guarantee Co.*, 171 Vt. 326, 335, 765 A.2d 450, 456 (2000), and that the municipal records relied upon in this case are "public records" under the terms of the policy. The trial court, in addition to finding no permit violation, found for defendant on all of these claims. Because we find no title defect as a matter of law, we do not reach these additional arguments.

addition of two bedrooms and a bathroom. An additional septic drain pipe connected the new bathroom to the existing drain pipe. Prior to construction, the Richardses received a zoning permit in 1994, the application for which appears in the Norwich town records. Attached to the application is a floor plan for a "Proposed Master Bedroom Suite" depicting a bedroom and an unlabeled space with features of a bathroom. The form language on the application states: "Town health regulations require a separate permit for new sewage disposal systems or replacement/repair of existing sewage disposal systems. A permit from the State of Vermont may also be required." Philip Dechert granted the Richardses a zoning permit, and his signature appears at the bottom of their application. At the time, Dechert was both the septic officer and zoning administrator for the town of Norwich.

¶ 5. Soon after the Kremers purchased the house in 1996, the septic system failed. They brought suit against the Richardses for a breach of deed warranty, misrepresentation, and fraud. These claims settled for $82,000.00.

¶ 6. The Kremers also sued Lawyers Title, alleging that the Richardses' failure to obtain a septic permit was a defect in title. The trial court granted Lawyers Title's summary judgment motion, agreeing with Lawyers Title that there was no defect or encumbrance at the time of sale and that the public records did not, therefore, provide notice of any defect. Here, the Kremers' argument turns entirely on their interpretation of the word "extend" as it was used in the septic regulations in effect in 1994. They argue that an "extension" of a septic system unambiguously includes an increase in the burden on the system. Because an increase in bedrooms is an increase in the burden on the septic system, they argue, the septic regulations required a septic permit for the addition of bedrooms to a home. They also contend that the term "extend" clearly applies to the additional drain pipe connecting the new bathroom to the existing septic drain pipe. After reviewing the applicable regulations, we find both of these arguments without merit.

¶ 7. In reviewing an award of summary judgment, we apply the same standard as the trial court, that is whether there are any genuine issues of material fact and whether any party is entitled to judgment as a matter of law. *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999); V.R.C.P. 56(c)(3). We give the opposing party the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists. *Gerrish v. Savard*, 169 Vt. 468, 469, 739 A.2d 1195, 1196 (1999). "Summary judgment is mandated ... where, after an adequate time for discovery, a party 'fails to make a showing sufficient to establish the existence of an element' essential to [its] case and on which [it] has the burden of proof at trial." *Poplaski v. Lamphere*, 152 Vt. 251, 254-55, 565 A.2d 1326, 1329 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (construing Fed. R. Civ. P. 56(c))).

¶ 8. We turn then to the question of whether the Kremers have made a sufficient showing that the failure to obtain a septic permit when the Richardses made their additions resulted in a violation of the septic regulations. The Kremers and Lawyers Title cite to slightly different dictionary definitions of the term "extend." Compare Random House Dictionary 684 (1988) ("to enlarge the scope of"), with Webster's Ninth New Collegiate Dictionary (Merriam-Webster Inc. 1999) ("to stretch out ... to cause to be longer"). It is a firmly established rule in this state that any uncertainty in land use regulations must be construed in a way that is favorable to the property owner, that is, against the alleged land

use violation. *In re Vitale,* 151 Vt. 580, 584, 563 A.2d 613, 616 (1989) (citing *Murphy Motor Sales, Inc. v. First Nat'l Bank,* 122 Vt. 121, 123-24, 165 A.2d 341, 343 (1960)). Here, therefore, we must construe any ambiguity in the term "extend" against the Kremers' alleged septic permit violation.

¶ 9. More importantly, we take the meaning of "extend" as it is used in the regulations from consideration of the regulations as a whole. E.g., *Conservation Law Found. v. Burke,* 162 Vt. 115, 121, 645 A.2d 495, 499 (1993) (recognizing that when we interpret regulations, we view them as a whole).

¶ 10. The permit section of the regulations in effect in 1994 reads: "No person shall construct a new individual sewage disposal system, nor extend nor replace an old one within the Town of Norwich, unless he holds a valid permit for the same . . . ." Norwich, Vt., Town Regulations to control contagious disease by regulating the installation of individual sewage disposal systems § V(1) (1973). The permit section makes no reference to the addition of bedrooms. In fact, the only reference to bedrooms in all of the septic regulations in effect in 1994 appears in the "Detailed Specifications" section governing the size of a septic tank. Detailed Specifications § 2.2 (1973) (size of septic tank to correspond to number of bedrooms); Detailed Specifications — May 1994 § 1.2 a.-b. (same). In the instant case, plaintiffs do not allege any septic permit violation related to the size of the septic tank.

¶ 11. In contrast, the septic regulations as amended in 1997 explicitly require a septic permit for the addition of bedrooms and plumbing. Norwich, Vt., Sewage Disposal System Ordinance § 3.4.1-2 (1997). The 1997 ordinance requires owners of single family residences to obtain a septic permit or approval of the sewage officer for any "change of use" of the property. *Id.* § 3.4.2. "Change of use" includes "the addition of plumbing or running water" and "the addition of bedrooms." *Id.* § 3.4.1. Significantly, whereas the septic regulations in effect in 1994 apply "to entirely new installations of individual sewage disposal systems or to *extension* or complete replacement of existing ones," Norwich, Vt., Town Regulations § II (1973) (emphasis added), the amended regulations state "[a]ll sewage disposal systems shall be built, *altered,* repaired and used in accordance with this ordinance." Norwich, Vt., Sewage Disposal System Ordinance § 3 (1997) (emphasis added). The term "extend," as used in the regulations in force in 1994, appears to have been replaced by the term "alter" in 1997. Because the previous permit regulations make no reference to bedrooms while the 1997 regulations explicitly reference the addition of bedrooms and plumbing, we do not construe the term "extend" to encompass the addition of bedrooms and plumbing. We thus do not agree with the Kremers that, in 1994, the regulations' use of the term "extend" imposed the need for a septic permit in as many contexts as are explicitly covered in the 1997 regulations.

¶ 12. Our interpretation of the septic regulations is consistent with that of the town septic officer and zoning administrator. Dechert testified in deposition that "[i]n 1994 . . . unless you were going to expand the system to accommodate the bedroom[,] there was nothing to kick in saying you had to [get a septic permit]." He explicitly distinguished expanding a house from expanding a septic system in 1994. When asked, "certainly as the septic officer in 1994 if a bedroom was added to a property it required a septic permit because the system was being expanded?" he replied: "No, you're not expanding. *You're expanding the house, not the septic system.*" (Emphasis added.) When asked to define the term "extend" he said "to do work on the septic system that would . . . increase the

capacity or increase the size of it *so it would involve putting in a larger septic tank or increasing the size or putting in a new leach field.*" (Emphasis added.)

¶ 13. It is undisputed that the Richardses did not put in a larger septic tank, nor did they put in a new leach field. As to the additional septic drain pipe, Dechert stated it was "questionable" as to whether a septic permit was required in this context, and explicitly stated that it was not the practice to require a permit in such a case. The fact that the Kremers' septic system failed after bedrooms were added to their home might suggest that the town should have required septic permits for such additions, as they do now. Nevertheless, it is not the duty of the title insurer to make up for the shortcomings of a town's septic regulations.

¶ 14. Dechert is the municipal official most intimately familiar with and responsible for administering the zoning and septic regulations. He could not discern the need for a permit after reviewing the Richardses' proposed additions. He was equivocal at best about the need for a permit when posed with a hypothetical of the exact septic work performed by the Richardses. Finally, there is no compelling indication of error on the part of the town. Accordingly, we cannot conclude there was a municipal permit violation in this case. Our case law in this area has dealt with clear regulatory violations. See *New England Fed. Credit Union v. Stewart Title Guar. Co.*, 171 Vt. 326, 333, 765 A.2d 450, 454-55 (2000) ("readily discover[able]" subdivision of property without state subdivision permit was an encumbrance on title for purposes of title insurance); *Hunter Broad., Inc. v. City of Burlington*, 164 Vt. 391, 396, 670 A.2d 836, 839-40 (1995) (city's violation of state subdivision regulation "should have been obvious ... from the very nature of the transaction"). As a threshold matter in any claim for title insurance, there must be a defect in title. In this case, the Kremers have failed to show any regulatory violation from which a defect in title could result.

*Affirmed.*

Note: Chief Justice Amestoy sat for oral argument but did not participate in this decision.