Placzek v. Ct. Attorneys Title Ins. Co., No. 269-5-10 Wmcv (Wesley, J., July 19, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Windham Unit** | **Docket No. 269-5-10 Wmcv** |

**Ronald D. Placzek and**
**John S. Placzek**
      **Plaintiffs**

      **v.**

**Connecticut Attorneys**
**Title Insurance Company**
      **Defendant**

### Order Granting Defendant's Summary Judgment Motion

Ronald D. Placzek and John S. Placzek ("Plaintiffs") have filed an action against Connecticut Attorneys Title Insurance Company ("Defendant" or "CATIC") claiming that CATIC must pay a claim in connection with an alleged Act 250 Permit violation under a policy CATIC issued to Plaintiffs at the time Plaintiffs closed on the insured property. Plaintiffs also seek damages from Defendant for breach of contract and bad faith. As discussed below, Plaintiffs' claims are without merit as CATIC had expressly excluded from coverage the type of violations for which Plaintiffs now make a claim. Thus, the Court **GRANTS** Defendant's Summary Judgment Motion and **DISMISSES** Plaintiffs' complaint.

**Facts**

In 1991, the State of Vermont District II Environmental Commission issued Land Use Permit # 2W0858 (the "Permit") to Eastland Inc., and various other co-permittees, including Ronald and Linda Rivers, regarding the use of a property on Town Highway #25 in Grafton, Vermont. Condition 6 of the Permit authorized the creation of an eight-lot subdivision to be used for seasonal camping, outdoor recreation and forestry management. Construction of housing was expressly prohibited. The Permit was recorded at Book 33, Page 473 of the Town of Grafton Land Records.

On May 10, 2001, Plaintiffs purchased Lot 4 of the subdivision from Ronald and Linda Rivers. A Title Report was prepared by CATIC as of May 10, 2001, which referenced the Land Use Permit, and stated that there were "no violations relative to the property." On the following day, CATIC issued Owner's Title Insurance Policy No. 1237139 to Plaintiffs, which provided coverage in the amount of $11,000, the purchase price of the Lot. The Policy contained various exceptions and exclusions from coverage.

A Vermont Property Tax Transfer Return ("PTTR") signed by Plaintiffs and later submitted to the Grafton Town Clerk in connection with the purchase of Lot 4, noted that the

property was "open land" prior to the transfer, and that it would be primarily used as "open land" after the transfer. The PTTR also referenced the specific Act 250 Permit the property was subject to, and stated that the purchase was in compliance with the Permit.

The Act 250 Permit on Plaintiffs' land restricted the use of the Lot by imposing conditions, including Condition 6: "The lots in this subdivision are approved for use as seasonal camps utilizing recreational vehicles, tents, or primitive lean-tos. The construction of housing is prohibited."

Sometime after 2001, Plaintiffs built a cabin on the subject property. On March 13, 2009, the Land Use Panel of the State of Vermont Natural Resources Board issued an Administrative Order to Plaintiffs for violating and failing to comply with the Permit by constructing improvements on the subject property that were not in compliance with Condition 6 of the Permit. Later in 2009, Plaintiffs filed a Title Insurance Proof of Loss Form with Defendant. Defendant denied Plaintiffs' claim under the Policy.[1]

**Analysis**

*1. Exclusion 1(a) of the Title Insurance Policy Issued by CATIC Excludes Coverage of Plaintiffs' Act 250 Permit Violation*

Pursuant to V.R.C.P. 56(c)(3), a moving party is granted summary judgment when it has demonstrated that no genuine issues of material fact exist, and that it is entitled to judgment as a matter of law. *Kremer v. Lawyers Title Ins. Corp*., 2004 VT 91, ¶7, 177 Vt. 553 (mem.)

Defendant moves for summary judgment on the grounds that there is no coverage under the policy because Plaintiffs violated the Act 250 Permit by constructing a cabin on their property after the date of the Policy. Since there was no violation or notice of violation of the Act 250 Permit on the date of the issuance of the Policy, Defendant maintains that Exclusion 1(a) of the Policy excludes Plaintiff's claim. The Court agrees that Exclusion 1(a) applies to the facts here and is dispositive of this case; thus, it does not reach Defendant's other arguments. As discussed below, Defendant's Summary Judgment Motion must be granted.

The proper construction of language in an insurance contract is a question of law. *Fireman's Fund Ins. Co. v. CNA Ins. Co*., 2004 VT 93, ¶ 8, 177 Vt. 215. The terms of an insurance contract are accorded their plain meaning, and any ambiguity will be resolved in the insured's favor, but the Court will not deprive the insurer of unambiguous terms placed in the contract for its benefit. *Id.* at ¶ 9. Insurance contracts are given a "practical, reasonable, and fair interpretation, consonant with the apparent object and intent of the parties, and strained or forced constructions are to be avoided." *McAlister v. Vt. Prop. & Cas. Ins. Guar. Ass'n*., 2006 VT 85, ¶ 17, 180 Vt. 203.

---

[1] Subsequent proceedings in the Environmental Court are now stayed, apparently to allow Plaintiffs an opportunity to pursue an amendment removing Condition 6 from the Permit.

The Title Insurance Policy issued by CATIC to the Placzeks generally insures, as of the date of the Policy and up to the amount of insurance, any defect in or lien or encumbrance on the Plaintiffs' title. However, the coverage is expressly made subject to exclusions and exceptions from coverage, and to conditions and stipulations in the Policy. The Policy exclusions include: exclusion for defects, liens, or encumbrances on title which were created by the insured (Exclusion 3(a)), or which attached subsequent to the date of the Policy (Exclusion 3(d)).

Additionally, Exclusion 1(a) excludes from coverage:

Any law, ordinance, or governmental regulation (including but not limited to building and zoning laws, ordinances or regulations) restricting, regulating, prohibiting, or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; … (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

CATIC argues that Plaintiffs' claims are excluded under Exclusion 1(a) because there was neither a violation of the Act 250 Permit on the ground nor a notice of violation of the Act 250 Permit in the public records on the date of the policy. CATIC asserts that the Act 250 Permit is by title and definition a land use permit, and thus any restriction contained in it falls within Exclusion 1(a). CATIC further notes that the fact that the Permit was in existence and valid on the date the Policy was issued demonstrates that the Lot was in compliance with the Permit on that date. Therefore, any alleged violation of the Permit occurred well after the Policy was issued, and thus could not fall under its coverage.

Plaintiffs respond to this contention by claiming that they do not seek coverage because they built a camp in violation of their Act 250 Permit; rather, they seek coverage based on the existence of the Act 250 permit at the time of purchase, claiming it was a defect or encumbrance on their property, restricting its use and value, which was not specifically listed in Schedule B to their policy. The Placzeks refer to the front page of the Policy, which states:

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS AND STPILUATIONS, [CATIC]…insures as of Date of Policy shown in Schedule A against loss or damage… sustained or incurred by the Insured by reason of …
2. Any defect in or lien or encumbrance on the title..”

Plaintiffs' argument is unconvincing. Plaintiffs ignore that coverage is expressly made *subject to* the "exclusions from coverage," which clearly includes Exclusion 1(a). Plaintiffs' assertion that, since the Permit is an encumbrance, it must therefore be covered by the Policy, wholly disregards the various exceptions and exclusions plainly articulated in the Policy. Whether or not the Act 250 Permit itself constitutes an encumbrance on title within the contemplation of the Policy is immaterial, since the Exclusion 1(a) applies to exclude it from coverage.

3

None of the Vermont cases in the area of title insurance coverage supports Plaintiffs' position that the mere existence of a permit, without any indication that the property in question was in violation, establishes liability for an encumbrance or a title defect. Rather, when interpreting exclusions from insurance coverage similar to Exclusion 1(a) here, courts have required either a missing permit or clear permit violations existing on the date of the policy before recognizing a title encumbrance which would trigger coverage liability. See, e.g. *Kremer*, 2004 VT 91, ¶ 14 (citations omitted); *Hunter Broadcasting, Inc. v. City of Burlington*, 164 Vt. 391, 393, 396-98 (1995), ( *lack* of a required subdivision permit breached a deed covenant against "encumbrances"); *New England Federal Credit Union v. Stewart Title Guarantee Co.*, 171 Vt. 326 (2000)(same result)

While Plaintiffs argue that *Stewart Title* stands for the view that the deferral of permit in that case was itself an encumbrance, they misconstrue the holding. Rather, the Supreme Court found that the title insurance company could have discovered the deferral of permit, which would have put the company on notice of a violation associated with the lack of a required subdivision permit which existed at the subject property on the date of the policy. The Court made clear that the defect in title was the *violation* of the subdivision permitting requirements, which constituted an "encumbrance" within the meaning of the policy.

In *Kremer*, plaintiffs purchased a title policy which contained an exclusion virtually identical to Exclusion 1(a), excluding "defects in title arising from any zoning law violation except to the extent that a 'notice of a defect … or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy." 2004 VT 91 at ¶ 3. Alleging that their predecessors' failure to obtain a septic permit was a defect in title, Plaintiffs sued their title insurer. The Court held that there was no municipal permit violation existing at the time of the issuance of the title policy, and thus no violation of the title policy. The Court noted that when the policy issued, no septic permit was required for simply adding bedrooms to the house, rather than replacing the entire septic system. *Id*. at ¶ 11. The Court concluded that its "case law in this area has dealt with clear regulatory violations", and that the Kremers had failed to demonstrate any such violation "from which a defect in title could result." *Id.* at ¶14.

Accordingly, Policy Exclusion 1(a) applies to the claims made by the Placzeks here, and the alleged encumbrance is not covered because no violation or notice of a violation was of record on the date of the Policy. As held by the cases just discussed, Exclusion 1(a) likely would not have excepted from coverage any violations of the permit existing at the time that could have been discovered by CATIC, if not expressly excluded in Schedule B of the Policy. This case, however, concerns a parcel of land which was in full compliance with a valid and properly recorded Act 250 Permit on the date of the issuance of the Policy. Indeed, the existence of the Permit evidences compliance with the applicable land use laws and regulations rather than any violation thereof. There was no violation of the Permit of record or on the ground on the date of the Policy, nor was a required permit missing. To require coverage merely because a Permit is attached to a property despite any indication of any actual or potential violation of the permit would extend the policy beyond its terms. See *Trinder v. Conn. Attorney's Title Ins. Co.*, 2011 VT 46, ¶ 13 .

Indeed, if the omission of a specific reference to a recorded Act 250 Permit from Schedule B were to be construed to require coverage, such an interpretation would render Exclusion 1(a) meaningless. The Vermont Supreme Court has declined to construe insurance contracts in such a manner. See *Trinder*, 2011 VT 46, ¶ 19 (refusing to find that marketability clause in title insurance policy covered an alleged encroachment of septic system onto a neighbor's property, since coverage was not indicated under a specific provision dealing such encroachments ). "Contracts of insurance, like other contracts, must receive practical, reasonable, and fair interpretation, consonant with the apparent object and intent of the parties … [and the] entire contract is to be construed together for the purpose of giving force and effect to each clause." *Town of Troy v. Am. Fid. Co.,* 120 Vt. 410, 417 (1958).

When Plaintiffs purchased the property and the Policy, the Act 250 Permit was valid and in place and the property was unimproved. Plaintiffs were permitted to use the property for seasonal camping and recreation. Plaintiffs then violated the Permit by building a permanent structure on the limited use property. There were no notices of violation of the Permit of record on the date of the issuance of the Policy. It was not until Plaintiffs' construction of the permanent structure that the State took enforcement actions and issued an Administrative Order. Accordingly, Exclusion 1(a) applies and precludes Plaintiffs' claim for coverage. Defendant's summary judgment motion is GRANTED.

*B. Plaintiff's Claim for Breach of Duty and Bad Faith Dealing Must Also Fail*

Plaintiffs have also alleged that Defendant breached its duties under the Policy and engaged in bad faith. However, since the Court has already determined that Plaintiffs' claims are not covered by the Policy pursuant to the clear language of Exclusion 1(a), the Court finds that Defendant had no duty to defend or indemnify Plaintiff and did not act in bad faith in refusing to do so.

Defendant had no duty to indemnify or defend Plaintiffs in this case because there was no coverage for Plaintiffs' claim under the Policy. Section 4(a) of the Conditions and Stipulations to the Policy only requires Defendant to defend defects, liens, or encumbrances insured against by the Policy. Since there was no duty to indemnify or defend under the circumstances present, there could not have been any bad faith on CATIC's part in denying coverage.

Indeed, in order to establish a claim for first party bad faith, a plaintiff must show that: "(1) the insurance company had no reasonable basis to deny benefits of the policy, and (2) the company knew or recklessly disregarded the fact that no reasonable basis existed for denying the claim." *Bushey v. Allstate Insurane Co.,* 164 Vt. 399, 402-03 (1995). An insurance company may challenge claims that are fairly debatable, and will be found liable only where it has intentionally denied a claim without a reasonable basis. *Id.* As this decision sets forth, Defendant was justified in denying coverage to Plaintiffs under the clear terms of the Policy, making the issue of whether coverage was appropriate beyond "fairly debatable." The Court will also award summary judgment to Defendant on Plaintiffs' bad faith claims.

## **ORDER**

**WHEREFORE** it is hereby **ORDERED**: Defendants' Motion for Summary Judgment is **GRANTED**.

Dated at Newfane, Vermont this  19th     day of July, 2011.

_____
Hon. John P. Wesley
Superior Judge