TransCanada Hydro Ne. Inc. v. Town of Vernon, No. 544-10-10 Wmcv (Wesley, J., Aug. 8, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                          **CIVIL DIVISION**
**Windham Unit**                                            **Docket No. 544-10-10 Wmcv**


**TransCanada Hydro Northeast Inc.**
> **Plaintiff**


> **v.**

**Town of Vernon**
> **Defendant**


### Order Denying Plaintiff's Motion for Summary Judgment

Plaintiff, TransCanada Hydro Northwest Inc. ("TransCanada"), appeals a property assessment made by the Town of Vernon ("the Town") of the hydropower facility it owns in Vernon, Vermont. TransCanada owns and operates a power plant located partially in Vernon, Vermont and partially in Hinsdale, New Hampshire. The Town determined the listed value of the property to be $32,075,500 as of April 1, 2010. TransCanada challenges this valuation, and asserts that the value was established by a determination made by the Director of the Division of Property and Review as $25,169,800 as of April 1, 2009. The Director made this valuation following an appeal of the Town's 2009 appraisal.

TransCanada has moves for summary judgment claiming that the so-called "Freeze Act" (32 V.S.A. § 4468) requires that the listed value of the property as of April 1, 2010 be set at the value determined by the Director as of April 1, 2009. The Freeze Act provides, in relevant part, that:

> "… [an] appraisal so fixed by the director… shall become the basis for the grand list of a taxpayer for the year in which the appeal is taken *and … for the two next ensuing years.* … The appraisal however may be changed in the ensuing two years if the taxpayer's property is materially altered, changed, damaged, or if the municipality, city or town in which it is located has undergone a complete reevaluation of all taxable real estate."

> 32 V.S.A. § 4468 (emphasis added).

TransCanada claims, and the Town does not dispute, that no material change to the physical structure of the property occurred between April 1, 2009 and April 1, 2010, nor did the Town undertake a revaluation of all taxable real estate in Vermont. In the absence of such changed circumstances, TransCanada maintains that the 2010 revaluation was in violation of the Freeze Act and must be set aside by the Court as a matter of law.

However, the Town maintains that the Freeze Act is inapplicable here, and that the reappraisal was valid and justified. The Town acknowledges that no material change to the generating capacity of TransCanada's power plant has taken place since April 1, 2009, nor does it attack the Director's decision as to the 2009 valuation appeal. Rather, the Town asserts that, although significant improvements to the plant's generating capacity were completed by the time of the 2009 appeal, the recognized methodology for fully accounting for the revenue anticipated associated with those improvements included a "lag", such that those anticipated revenues increased significantly between April 1, 2009 and April 1, 2010, resulting in a higher assessment using the income approach to valuation. The Town insists that this "lag" effect must be recognized as a material change that prevents the application of the Freeze Act. The Court agrees.

**Factual Background**

The Town supports its claims for disputed and uncontested facts with the affidavit of George E. Sansoucy, a licensed engineer and licensed appraiser, who has been employed by the Town of Vernon to appraise and assess the power facility for the last fifteen years. Mr. Sansoucy explains that the most recent and final phase of an overall site upgrade project, in the works for many years, was TransCanada's replacement of four turbines. The replacement resulted in an increase in power generating capacity for the plant. The method of accounting for the value to the plant added by the improved generating capacity is at the heart of the current dispute.

As observed in the Director's opinion as to TransCanada's appeal of the 2009 assessment, ("Director's opinion"), issued on Nov. 16, 2010: "The income approach to value is the most appropriate since information on an income stream is available and the cost and market approaches are not appropriate for use in this evaluation." Neither party disputed the use of the income approach, then or now; thus, the crux of any dispute as to value turns upon variations in the data that are used to generate projected income streams associated with the manufacture of electricity. Once projected, those income streams are discounted to present value to establish the value of the facilities that produce them. See *US Gen New England, Inc. v. Town of Rockingham,* 177 Vt. 193, 195-97 (2004) (examining the income capitalization approach to valuing a hydro-electric plant).

Mr. Sansoucy further attests that the universal and customary convention for the valuation of public utility property is to base the valuation on the data available as of December 31st of the next-to-previous year. Thus, with respect to the two years at issue in this case, the Town based its assessment for April 1, 2009 on projections from data on the books as of December 31, 2007; the Town based its assessment for April 1, 2010 on projections from data on the books as of December 31, 2008. This is done for a number of reasons: first, the lag permits more effective alignment with quarterly and end of year reporting requirements for utility companies, many of which are subsidiaries of larger companies; second, and particularly during periods of expansion in capital investment, the lag guards against over-estimating future income streams, which may lead to the need for later correction. Mr. Sansoucy states that the convention of using data from December 31st of the next-to-previous year is not isolated to TransCanada,

2

but is applied to all utilities and power generation facilities in Vernon equally, including the Vermont Yankee nuclear plant.

It is apparent from the Director's opinion that neither party contested the methodology involving reliance on lagged data in the appeal of the 2009 assessment. The Town had assessed the plant at $24,779,300 for the generating facilities, plus $390,500 for the value of the land, using the income capitalization approach based on an analysis undertaken by Mr. Sansoucy. As he indicates in his current affidavit, that analysis relied on income and expense data posted as of December 31, 2007. The basis for TransCanada's appeal, however, was claimed error in: 1) failing to properly account for personal property; 2) failing to include certain expected costs for relicensing in the income capitalization analysis; and 3) failing to exempt the value of fish ladder structures from the taxable property. The Director rejected each of these challenges, finding "that the appellant was not able to overcome the presumption of value determined by the Town of Vernon for the real property." Thus, the assessed value established as of April 1, 2009, as upheld by the Director, was based on Mr. Sansoucy's methodology, incorporating the convention of reliance on lagged data for revenues and expenses which he claims is standard for the industry, and reflected in the history of assessments of the plant by the Vernon listers.

In making its assessment for April 1, 2010, the listers relied on Mr. Sansoucy's new capitalization analysis, which incorporated revenues and expenses as posted on Dec. 31, 2008. Mr. Sansoucy acknowledges that, as compared with the 2007 data used for the 2009 assessment, the ISO annual rated capacity of the plant was reduced to 34.4 megawatts from the previous rating of 36.79 megawatts. The reduced capacity was employed in the 2010 capitalization analysis. As further observed, however:

> The electric energy production was now separated between on-peak and off-peak historic production, and on-peak and off-peak qualifying renewable energy credit generating production, totaling a combined 191,900,000 kilowatts. The energy pricing revenue for the valuation of 2010, as compared to 2009, was broken out and forecasted separately for the completion of the 2010 appraisal. Most notably, with the final completion of the plant, the additional ancillary services revenue generated from the plant, as paid by ISO and reported by the company, was also priced into the valuation in 2010 for the first time. The final valuation of the entire facility as of April 1, 2010 was $119,500,000.00 which constitutes the assessment of the plant as finally completed. The Town of Vernon's 28% share was $35,117,900.00.

The Town maintains that for many years while its plant has undergone renovation and expansion, TransCanada officials and employees have had a mutual understanding with the listers as to the benefits of the lag in accounting for posted revenues and expenses. The Town observes that this convention actually benefitted TransCanada by delaying its tax exposure, and was an arrangement to which officials at TransCanada fully acquiesced. Nevertheless, TransCanada disputes any enforceable agreement, either explicit or tacit, to base its assessment on lagged data, Moreover, TransCanada argues that, since the Town has produced no written agreement, any reliance on a claim arising from oral discussions would violate the statute of

frauds since it would have extended beyond one year.  TransCanada also challenges whether any agreement could supersede the plain and unambiguous language of the Freeze Act.

**Analysis**

Pursuant to V.R.C.P. 56(c)(3),  a moving party is granted summary judgment when it has demonstrated that no genuine issues of material fact exist, and that it is entitled to judgment as a matter of law. *Kremer v. Lawyers Title Ins. Corp*., 2004 VT 91, ¶7, 177 Vt. 553 (mem.)  Here, the Court finds a genuine issue of material fact which remains in dispute, and must deny Plaintiff's Summary Judgment Motion.

As stated above, the Town concedes that the new appraisal made in 2010 was not spurred by any material alteration to the physical structure of the power plant, nor to any notable improvement made to generating capacity, between April 1, 2009 and April 1, 2010.  Rather, the Town maintains that TransCanada's interpretation of the Freeze Act is overly narrow, and that non-physical changes and alterations to the valuation of a given property, as reflected by the consistent application of the lagged accounting methodology employed in the assessment of the plant, also permit the Town to reappraise the property.

To support this proposition, the Town relies on the Supreme Court's discussion of the Freeze Act in *Shetlant Properties Inc. v. Town of Poultney*, 145 Vt. 189 (1984).  The Court noted that the intent of the "freeze" statute was to remedy the practice of repeated yearly increases in the assessed value of property, not evidently related to or justified by any changes increasing its market value, and resulting in harassment of the taxpayer by subjecting him to the trouble and expense of annual appeals. *Id*. at 193-94 (citing to similar legislation from New Jersey).

The Court proceeded to define the "material alteration, change or damage" that is required before a Town can reappraise a property within three years of an assessment made by a Court or a director, as anything that "is relevant and of consequence to the value of the property." *Id.* at 194.  Notably, the Court did not limit "material changes" to merely physical alterations to a real property.  However, *Shetlant Properties* involved a distinctly different class of property, raising valuation issues considerably at variance with the unique problems posed in valuating electric generating facilities, as discussed in *US Gen New England, Inc. v. Town of Rockingham*.  Nevertheless, the Court is persuaded that the holding in *Shetlant Properties* supports the conclusion that the economic changes reflected by the Town's lagged accounting methodology is properly recognized as a "material change" which "is relevant and of consequence to the value of the property," and therefore comes within the Freeze Act's exclusions.

In reaching the conclusion that the Town's reliance on Mr. Sansoucy's methodology arguably yields a material change exempting the 2010 appraisal from the effect of the Freeze Act, the Court is not required to directly address TransCanada's statute of frauds argument.  In the Court's view, whether or not any tacit or explicit "agreement" arose between the parties regarding the application of the lagged methodology is not material.  Rather, the Court is satisfied that the Town has established evidence that this 'lagged' methodology is typically employed in the valuation of electric generation facilities, and assuming that conclusion is

4

sustained after a full hearing, the use of such methodology could produce a material change in value that would be properly recognized as exempt from the effects of the Freeze Act.

To be sure, TransCanada disputes both that the methodology is standard in the trade, and that its failure to appeal earlier appraisals represents an acknowledgment of the typicality of the approach, or acquiescence to its use in the future. However, such a dispute as to whether or not the lagged data approach was widespread and typical to the industry *is* material to the valuation issue here, and prevents summary judgment - distinct from any claim that Transcanada should be precluded from challenging the appraisal based on an agreement to be bound by the methodology that produced it. Furthermore, although not squarely informative of any claim of "contract" rights between the parties, evidence of past patterns and practice, including conversations, meetings and memoranda, may conceivably bear on the question as to whether or not it was reasonable for the Town to rely on the lagged data method of valuation.

In sum, if after consideration of all the evidence, the Town establishes the reasonableness of its valuation methodology, and that the application of such a methodology produces a material change in the value of TransCanada's plant between 2009 and 2010, the Court may very well conclude that such an appraisal is not precluded by the Freeze Act. Accordingly, at this time, summary judgment in favor of Plaintiff is inappropriate.

## **ORDER**

**WHEREFORE** it is hereby **ORDERED**: Plaintiff's Motion for Summary Judgment is **DENIED**.

Dated at Newfane, Vermont this   8th     day of August, 2011.

_____
Hon. John P. Wesley
Presiding Judge

5