# Peter C. and Ulla Behn v. Northeast Appraisal Co., Inc.

[483 A.2d 604]

No. 532-81

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed September 7, 1984

*Thomas F. Heilmann* and *Anthony L. Leccese* (On the Brief) of *Thomas F. Heilmann, P.C.*, Burlington, for Plaintiffs-Appellants.

*Peter B. Joslin* of *Theriault & Joslin, P.C.*, Montpelier, for Defendant-Appellee.

**Underwood, J.** Plaintiffs brought an action against Northeast Appraisal Company (NEAC) alleging negligence in performing a real estate appraisal. Plaintiffs claimed that they were damaged by NEAC's negligence when they were unable to sell their property to a prospective purchaser with whom they had entered into a sales contract. At the close of plaintiffs' case, NEAC moved for a directed verdict; the motion was granted primarily on the ground that several elements of negligence had not been demonstrated by the plaintiffs. Plaintiffs appeal the decision of the Washington Superior Court granting the directed verdict in favor of the defendant.

The facts disclose that in April of 1975 the plaintiffs entered into a contract with a resident of Honolulu, Hawaii, to sell their residence for $150,000. The consummation of the contract was conditioned upon the purchaser obtaining a first mortgage loan of at least $80,000. Plaintiff, Peter Behn, assisted the prospective purchaser in an effort to obtain such financing. On the purchaser's behalf, Behn typed up a loan application to the Chittenden Trust Company (Bank) and the purchaser signed it. The purchaser and his wife were named as the applicants. Plaintiff Peter Behn received a check for $75 from the purchaser for the appraisal fee, along with a letter requesting the Bank to arrange for an appraisal. Behn deposited the check in his account and then sent the Bank his own personal check in the amount of $75 to cover the appraisal fee.

The Bank received the purchaser's loan application and the appraisal fee and engaged NEAC to do an appraisal of plaintiffs' property. NEAC was given no information about the sales contract, nor were the plaintiffs given a copy of the appraisal report. Although plaintiff Peter Behn's name was written on the appraisal form in the space for "Borrower/Client," this was because he was the property owner; NEAC had no information about the purpose of the appraisal, and knew only that the Bank had requested an appraisal of the Behn property.

Because the NEAC appraisal of the Behn property set the value at $88,500, the Bank would not grant a mortgage loan

of more than $71,000. There was evidence that the purchaser, through the plaintiffs, applied to a second lending institution for a loan of $100,000, but the result of that application is not clear from the record.

The prospective purchaser elected to void the sales contract because of his inability to satisfy the $80,000 financing contingency. Subsequently, the plaintiffs relisted their property and sold it for $105,000. Plaintiffs then filed a complaint against NEAC alleging that it negligently performed the appraisal of their property and that, as a result, they were unable to sell their property to the first prospective purchaser for $150,000.

The case went to trial, and after plaintiffs' case-in-chief, defendant NEAC successfully moved for a directed verdict. The trial court issued a written decision stating that (1) NEAC owed no legal duty to the plaintiffs; (2) the appraisal report was confidential between NEAC and the Bank; (3) the plaintiffs failed to establish any negligence on the part of NEAC; and (4) the appraisal was not the proximate cause of the alleged damage suffered by plaintiffs.

On appeal, plaintiffs' attack was primarily directed at the trial court's conclusion that NEAC owed them no legal duty. They argue that if they failed to produce the quantum of evidence necessary to show a duty, it was because the trial court erroneously excluded evidence from which a jury could reasonably have found that there was a legal duty owed by NEAC to the plaintiff. By a supplemental brief, plaintiffs also challenge the composition of the superior court which heard the case. They argue that the court as constituted had no jurisdiction to hear the matter. We disagree with plaintiffs' contentions and affirm.

■ Plaintiffs' argument that the trial court committed reversible error by excluding certain evidence is intertwined with their argument that NEAC owed them a legal duty in performing the appraisal. The trial court sustained defendant's objections to several of plaintiffs' questions as being irrelevant. Generally, plaintiffs argue that these questions attempted to inquire into NEAC's expectation regarding the appraisal, and that the answers would be relevant to the existence of NEAC's duty to them. We will address plaintiffs' contention that NEAC owed them a legal duty before address-

ing the claim of error regarding the excluded evidence. Since we are reviewing plaintiffs' claim of a legal duty based on a directed verdict for defendant NEAC, we will view the evidence in the light most favorable to the plaintiffs and exclude NEAC's modifying evidence. *Vermont National Bank* v. *Dowrick*, 144 Vt. 504, 509, 481 A.2d 396, 399 (1984).

The evidence indicates that the Bank contracted with NEAC to perform the appraisal of plaintiffs' property; plaintiffs were not a party to the contract. Plaintiffs' claim of a legal duty, however, is not based upon a contractual relationship; instead, it is based upon what they characterize as reasonable reliance by them on the appraisal and an allegation that NEAC knew that if it negligently set the appraisal too low the plaintiffs would lose the sale. Suffice it to say that the record does not support these allegations. Plaintiffs attempt to construct their theory of duty relying on the fact that plaintiff Peter Behn's name appeared in the "Borrower/Client" blank on the appraisal form and by asserting that Peter Behn "paid the fee" for the appraisal. There is no credible evidence that plaintiffs were either the borrowers or clients; nor is there evidence that NEAC considered them to be either. Plaintiffs' assertion that they paid for the appraisal is patently misleading. Peter Behn merely made out and mailed to the Bank his personal check after the prospective purchaser had sent him the fee to pay for the appraisal.

On these facts, plaintiffs argue that they fall under the rule of *Larsen* v. *United Federal Savings & Loan Association,* 300 N.W.2d 281 (Iowa 1981), and therefore defendant's motion for a directed verdict should have been denied. In *Larsen,* the Supreme Court of Iowa held that the purchasers of this home were entitled to rely on the accuracy of an appraiser's report done at the request of a lending institution. The court reasoned that the purchasers could reasonably be expected to rely on the appraised value of the home where the purchasers paid for the appraisal and were entitled to receive a copy of it. Furthermore, the appraiser in *Larsen* was an employee of the defendant.* The *Larsen* court summarized the dispositive facts as follows:

---

* Plaintiffs in the instant case note that NEAC was a wholly owned subsidiary of the Bank. This fact, however, is irrelevant to our determination of the case.

Even though the appraisal might be made primarily for the benefit of the lending institution, the appraiser should also reasonably expect the home purchaser, who pays for the appraisal and to whom the results are reported (and who has access to the written report on request), will rely on the appraisal to reaffirm his or her belief the home is worth the price he or she offered for it. The purchaser of the home should be among those entitled to rely on the accuracy of the report . . . .

*Id.* at 287. The instant case, unlike *Larsen,* involved the *sellers* of the home. It would be the prospective purchaser, not the Behns, who would be situated similarly to the plaintiffs in *Larsen.*

In finding that the lending institution owed a duty to the purchasers, the *Larsen* court relied upon the Restatement (Second) of Torts § 552 (1977). The *Larsen* court interpreted § 552 to mean that "liability may extend to losses sustained by more than one person, as long as the supplier of the information (1) intended to supply the information to that person . . . , or (2) knew the *recipient* intended to supply it." 300 N.W.2d at 287. See Restatement, *supra,* § 552 (2) (a). Furthermore, for there to be a duty under this theory, there must be "justifiable reliance" on the appraisal report by the plaintiffs. Restatement, *supra,* § 552 (1). Thus, for a legal duty to arise under *Larsen* and the Restatement, *supra,* § 552, there must be both (1) the requisite intent or knowledge by NEAC, and (2) "justifiable reliance" by the Behns. We find both lacking. There is no evidence that NEAC intended to supply the appraisal report to the plaintiffs or that they knew the Bank or the prospective purchaser would supply it to the plaintiffs. Similarly, the record does not support plaintiffs' claim of reasonable reliance on the appraisal report. Thus, plaintiffs' attempt to come within the limited rule announced in *Larsen* is to no avail.

We do not pass upon the wisdom of the rule announced in *Larsen*; we simply observe that the facts of the instant appeal do not come within those of *Larsen.* We express no opinion on the applicability of the rule in *Larsen* in Vermont under similar facts.

Next we return to plaintiffs' claim that the trial court

erred in excluding certain evidence. None of the excluded evidence was relevant to the theory of a legal duty as urged by plaintiffs. Under the rule of *Larsen* and § 552 of the Restatement, the question is whether NEAC intended that the report go to the plaintiffs, or whether NEAC knew that the report was likely to be turned over to the plaintiffs. Plaintiffs assert that three questions which were excluded would have been probative of NEAC's expectations regarding the appraisal. Our review of the record convinces us that this is not the case with two of the questions, and that there was a woefully inadequate evidentiary foundation for the admissibility of the third. The questions, as propounded, would not help the plaintiffs in their attempt to come within the rule of *Larsen* and § 552 of the Restatement. Thus, we find no error in the trial court's evidentiary rulings. See V.R.E. 401, 402. Plaintiffs have failed to show that defendant NEAC owed them a legal duty in performing the appraisal, and answers to the questions excluded at trial would have made no difference.

 Absent a duty of care, an action for negligence must fail. *Thurber* v. *Russ Smith, Inc.*, 128 Vt. 216, 219, 260 A.2d 390, 392 (1969); *Lavallee* v. *Pratt*, 122 Vt. 90, 93, 166 A.2d 195, 197 (1960). Since the plaintiffs advanced no valid theory of duty, with or without the excluded questions, the trial court was correct in directing a verdict for the defendant; therefore, we need not address plaintiffs' arguments that the court erred in concluding that the appraisal report was confidential, that they failed to establish negligence, and that there was no proximate cause.

Plaintiffs next argue that the trial court was improperly constituted because the presiding judge heard the case alone when one assistant judge was allegedly available. Plaintiffs cite 4 V.S.A. § 111(a) and *Vermont Union School District No. 21* v. *H. P. Cummings Construction Co.*, 143 Vt. 416, 469 A.2d 742 (1983), in support of this argument.

At the time of the proceedings below, 4 V.S.A. § 111(a) provided as follows:

> A superior court shall be held in each county at the times and places appointed by law, consisting of one presiding judge and the two assistant judges, if available. If two assistant judges are not available, court shall be

held consisting of one presiding judge and one assistant judge, if available.

For plaintiffs' argument to prevail, it must be shown that at least one assistant judge was available to sit with the presiding judge. In *Cummings*, trial had begun with the presiding judge and with two assistant judges both present; however, an illness subsequently rendered one assistant judge unavailable. Rather than proceed with one assistant judge, the presiding judge dismissed the remaining assistant judge and proceeded alone. In *Cummings*, we noted that "nothing in the record indicates that the other assistant judge was unavailable." 143 Vt. at 422, 469 A.2d at 746.

In the instant case, an affidavit of the Washington Superior Court clerk indicates that the two assistant judges of the court were sitting with another presiding judge in another matter at the time of the instant trial. Thus, facially the record indicates that both assistant judges were unavailable. *Cummings* is clearly distinguishable because in that case an assistant judge who was actually sitting on the case and was available within the meaning of 4 V.S.A. § 111(a) was dismissed. Here, the record reveals only that both assistant judges were involved in hearing another case. On these facts we are unable to say that at least one assistant judge was available. Plaintiffs have not demonstrated a violation of 4 V.S.A. § 111(a).

*Affirmed.*