933 A.2d 177 (2007)
2007 VT 65
Ann R. WEBB
v.
John LECLAIR and John Leclair d/b/a Leclair Appraisal.
No. 06-063.
Supreme Court of Vermont.
July 12, 2007.
*178 Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.

ENTRY ORDER
¶ 1. Plaintiff Ann Webb appeals a summary judgment for defendant John Leclair on her claims of negligent misrepresentation, fraud, consumer fraud, and negligence arising from defendant's appraisal of a home she purchased. The appraisal was done on behalf of plaintiffs mortgage lender. Plaintiff argues that the superior court erred in both requiring privity between defendant and her before she could sue for damages caused by errors in the appraisal, and in dismissing her consumer fraud count. We hold that, on the facts before the superior court at summary judgment, plaintiff failed to show that defendant owed her a duty with respect to her common law claims, and that plaintiff's consumer fraud claim is in fact an assertion of malpractice that is outside the scope of our consumer fraud law. We therefore affirm.
¶ 2. Recitation of the facts in this case first requires resolution of plaintiff's cry of procedural foul. Vermont Rule of Civil Procedure 56(c)(2) requires a party moving for summary judgment to attach to its motion a "separate, short, and concise statement of the material facts as to which the moving party contends that there is no genuine issue to be tried." The rule provides that the party opposing summary judgment "shall":
include with [its] affidavits and memorandum . . . a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

V.R.C.P. 56(c)(2) (emphasis added).
¶ 3. In this case, plaintiff failed to file a statement of contested facts in response to defendant's motion for summary judgment and statement of undisputed facts. Instead, she filed a forty-six-page memorandum of law with accompanying exhibits.
¶ 4. Discrete statements of undisputed and disputed facts have been required for more than ten years now. See Reporter's Notes to 1995 Amendment, V.R.C.P. 56. As the Reporter's Notes state, this provision was intended to focus summary judgment arguments and allow courts to more readily determine the material facts at issue. Id. Plaintiff recognizes in her appellate *179 brief that we have consistently enforced the rule that a plaintiff's failure to controvert facts in a counter statement requires that the moving party's undisputed facts be taken as true. Gallipo v. City of Rutland, 2005 VT 83, ¶ 35, 178 Vt. 244, 882 A.2d 1177; see also Boulton v. CLD Consulting Eng'rs. Inc., 2003 VT 72, ¶ 29, 175 Vt. 413, 834 A.2d 37 (facts in moving party's statement deemed undisputed when supported by the record and not controverted by nonmoving party's statement); Richart v. Jackson, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000) (same).
¶ 5. In Gallipo, Boulton, and Richart, both parties submitted at least some form of a factual statement; the error was in the opposing party's failure to respond completely. Gallipo, 2005 VT 83, ¶ 9, 178 Vt. 244, 882 A.2d 1177; Boulton, 2003 VT 72, ¶ 29, 175 Vt. 413, 834 A.2d 37; Richart, 171 Vt. at 97, 758 A.2d at 321. Here, plaintiff failed to submit any separate statement of facts at all. As the rule specifies, the superior court responded by admitting all of the facts that defendant proffered as undisputed. On appeal, plaintiff urges that her opposing memorandum contested many of defendant's proffered facts, and that she should not be faulted for her "stylistic decision" to present her facts in a strictly narrative form. She further claims that, unlike the plaintiff in Gallipo, she was not on clear notice from the trial court that it would refuse to consider her facts unless they were presented in a separate statement.
¶ 6. The requirements, and consequences, of Rule 56(c)(2) are plain from its text. Forcing courts to sift through nearly fifty pages of narrative in order to find contested and uncontested facts is precisely the type of "needle in a haystack" search the rule is meant to avoid. The trial court correctly took defendant's submitted facts which are supported in the record as true. We do as well.
¶ 7. Accordingly, the undisputed facts are as follows. In July 2003, plaintiff, with the help of her real estate broker, entered into a purchase and sale agreement for a home in Essex, Vermont for $310,000. The purchase and sale agreement contained the following appraisal contingency:
If the property fails to appraise at or above purchase price, Purchaser shall have the right to terminate the agreement. Appraisal to be arranged and paid for by Purchaser on or before September 10, 2003. If this contract is subject to financing . . . such appraisal must be acceptable to Purchaser's mortgage lender.
The record, however, contains no evidence that the sellers ever signed this contingency agreement.
¶ 8. To finance a portion of the purchase price, plaintiff applied for a loan from Spruce Mortgage ("Spruce") for $110,000. Spruce hired defendant, a licensed Vermont appraiser, to appraise the property in order to determine whether there was sufficient equity to cover the loan. A loan officer at Spruce faxed defendant the request for the appraisal and included plaintiff's purchase and sale agreement, a copy of the "Multiple Listing Service" (MLS) sheet for the property, and a copy of the deed for the property. Plaintiff did not make arrangements to have any other appraisal done before the closing.
¶ 9. In the course of his appraisal, defendant inspected the property, reviewed the listers' files for the Town of Essex, which contained evidence that the home was built in 1978, and reviewed sales data for other properties in the Essex-area market. Based on his "research, education and experience," defendant valued the house at $310,200 on August 28, 2003. He was not encouraged by employees of Spruce or *180 anyone else to appraise the house at a value equal to or greater than the contract price.
¶ 10. Defendant's appraisal report stated that "[t]he function of the appraisal is to assist the above-named Lender in evaluating the subject property for lending purposes." Defendant submitted his report to Spruce, which subsequently sent it on to the underwriter of the loan. Defendant had no agreement with plaintiff or her real estate broker with respect to the appraisal. His client was Spruce, and he had no conversations with plaintiff or her broker until plaintiff called him several weeks after the closing date of September 30, 2003.
¶ 11. At an unknown date between September 23, 2003 and the closing on September 30, 2003, plaintiff allegedly had a conversation with the Spruce loan officer in which the loan officer stated that the appraisal "numbers had been met" and that it was "clear sailing." The loan officer did not recall this conversation. At the closing, plaintiff reimbursed Spruce for a portion of the costs of defendant's appraisal. She did not receive or review a copy of defendant's appraisal report until it was sent to her by Spruce weeks later. Plaintiff conceded in her deposition that the first time she became aware that defendant had estimated that the house was twenty-five years old was after the closing when she first read his report.
¶ 12. This suit arose months after the closing when the house was appraised by different appraisers who valued it at considerably less than defendant had. Specifically, plaintiff alleged in her complaint that one appraiser valued the house at $255,000, while another valued it at $252,000 despite an appreciating real estate market and improvements made by plaintiff. Plaintiff further asserted that the Essex land records show that the house was constructed in 1966, and that despite being marketed as a twenty-six year old home, it was in fact thirty-seven years old. Based on the discrepancy in appraisals, plaintiff sued defendant for: (1) negligent misrepresentation, (2) fraud, (3) consumer fraud, (4) negligence, and (5) fraudulent concealment.
¶ 13. Defendant successfully moved for summary judgment on all counts. The trial judge concluded that defendant owed no common law or statutory duty to plaintiff. Regarding the negligent misrepresentation claim specifically, the court relied on Hedges v. Durrance, 2003 VT 63, ¶ 10, 175 Vt. 588, 834 A.2d 1 (mem.), and found that such claims made by a third party, such as plaintiff, require evidence that the defendant "intended to induce reliance by a third party or invited a third party's reliance." The court found no evidence that defendant ever induced plaintiff to rely on his appraisal. As for the consumer fraud count, the court found insufficient evidence that defendant made any false or deceptive misrepresentation of fact to plaintiff or that he concealed a material fact from her. The remainder of her claims, fraud and fraudulent concealment, were dismissed for lack of intent. On appeal, plaintiff contests the dismissal of only her negligent misrepresentation, negligence, and consumer fraud claims.
¶ 14. This Court reviews an award of summary judgment using the same standard as the trial court; the familiar inquiry is whether there are any genuine issues of material fact and whether any party is entitled to judgment as a matter of law. Kremer v. Lawyers Title Ins. Corp., 2004 VT 91, ¶ 7, 177 Vt. 553, 861 A.2d 1103 (mem.); V.R.C.P. 56(c)(3). "Summary judgment is mandated where, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to [its] case and on which [it] has *181 the burden of proof at trial." Kremer, 2004 VT 91, ¶ 7, 177 Vt. 553, 861 A.2d 1103 (quotations and ellipses omitted). "We give the opposing party the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists." Id. Plaintiffs may not, however, rely on bare allegations alone to meet the burden of demonstrating a disputed issue of fact. Morais v. Yee, 162 Vt. 366, 372, 648 A.2d 405, 409 (1994).
¶ 15. Plaintiff largely frames the issue in this case as whether we should adopt the holding of Larsen v. United Federal Savings & Loan Ass'n, 300 N.W.2d 281 (Iowa 1981), noting that we faced the same question in Behn v. Northeast Appraisal Co., 145 Vt. 101, 483 A.2d 604 (1984). In Larsen, the Iowa Supreme Court held that purchasers of a home were entitled to rely on the accuracy of an appraisal done at the request of the lending institution, and thus, there was a duty of care running between the appraiser and the purchasers. 300 N.W.2d at 287-88. The Larsen rationale was:
It is enough that [the purchaser] be a third party whom the negligent provider of the information knew would utilize it. Even though the appraisal might be made primarily for the benefit of the lending institution, the appraiser should also reasonably expect the home purchaser, who pays for the appraisal and to whom the results are reported (and who has access to the written report on request), will rely on the appraisal to reaffirm his or her belief the home is worth the price he or she offered for it.
Id. at 287.
¶ 16. We declined to adopt the Larsen rationale in Behn because we held that even under that approach the plaintiff, the seller of the home, would not prevail against the defendant, the appraisal company. We stated:
Thus, for a legal duty to arise under Larsen and the Restatement [(Second) of Torts § 552 (1977)], there must be both (1) the requisite intent or knowledge by [defendant], and (2) "justifiable reliance" by [plaintiff]. We find both lacking. There is no evidence that [defendant] intended to supply the appraisal report to the plaintiffs or that they knew the Bank or the prospective purchaser would supply it to the plaintiffs. Similarly, the record does not support plaintiffs' claim of reasonable reliance on the appraisal report. Thus, plaintiffs' attempt to come within the limited rule announced in Larsen is to no avail.
145 Vt. at 105, 483 A.2d at 607. Although the situation here is closer than in Behn. because it is the home purchaser, rather than the seller, who is suing, we conclude that the first reason given in Behn for distinguishing Larsen is equally present. In this case, the lender is the appraiser's only client. There is no evidence defendant intended to supply the appraisal to plaintiff and did not do so until well after the closing occurred in response to a specific request. Defendant did not know that the lender would supply the appraisal to plaintiff. The lender had no obligation to do so. Before the closing, the plaintiff heard about the appraisal informally and then only in vague terms, the information being only that the sale could go forward.[*]
¶ 17. Our analysis of Behn is reinforced by two more recent decisions. In Bovee v. Gravel, 174 Vt. 486, 811 A.2d 137 (2002) (mem.), shareholders of a financial institution *182 sued the institution's attorneys alleging malpractice in civil litigation arising out of the conviction of the president of the institution for bank fraud and related crimes. We held that the suit was properly dismissed because the tort required privity or "a relationship . . . approaching that of privity," and that relationship did not exist between corporate counsel and the shareholders in that case. Id. at 488-89, 811 A.2d at 141. We specifically addressed the elements of the tort of negligent misrepresentation because plaintiff argued that the relationship requirement was relaxed for that tort, and again emphasized that the relationship had to be "`so close as to approach that of privity.'" Id. at 489, 811 A.2d at 142 (quoting Petrillo v. Bachenberg, 139 N.J. 472, 655 A.2d 1354, 1358 (1995)). We noted that such a relationship is typically found where "the attorney was aware that the third party would rely and intended to induce such reliance." Id. at 490, 811 A.2d at 142. It is precisely that awareness and intent that is missing here.
¶ 18. Bovee was followed a year later by Hedges, 2003 VT 63, 175 Vt. 588, 834 A.2d 1, where the opponent to a lawyer's client in a divorce proceeding sued the lawyer alleging that he had committed malpractice in drafting a deed implementing the divorce decree. We reiterated the Bovee rule, explaining that in the context of negligent misrepresentation, "courts have allowed such claims only where an attorney intended to induce reliance by a third party or invited a third party's reliance." Hedges, 2003 VT 63, ¶ 10, 175 Vt. 588, 834 A.2d 1. Again, we note that there is no evidence of either here.
¶ 19. Finally, we note that the Behn holding is consistent with Fuller v. Banknorth Mortgage Co., 173 Vt. 488, 788 A.2d 14 (2001) (mem.), where the home purchaser sued the lender under similar circumstances. We held that without facts indicating that the lender went beyond its role as mortgagee, it "does not take on any duty to the borrower when it undertakes an investigation for its own benefit." Id. at 490, 788 A.2d at 17. Reinforcing the lack of obligation on the lender in this case, the loan application stated that plaintiff agreed that Spruce made no representation as to the value of the property.
¶ 20. Based on the record before us, we conclude that plaintiffs case is precluded by Behn. Defendant owed no duty to plaintiff on which plaintiff could rest a negligence or negligent misrepresentation claim. Again, we do not have to determine whether we would follow the Iowa Supreme Court decision in Larsen on different facts.
¶ 21. The only remaining issue is whether the court erred in granting judgment for defendant on plaintiff's consumer fraud claim. The court dismissed this claim for a number of reasons, the primary one being that professional opinions of value by appraisers, even if erroneous, cannot constitute consumer fraud. In reaching that conclusion, the court relied on the decision of the United States District Court for the District of Vermont in Kessler v. Loftus, 994 F.Supp. 240 (D.Vt.1997), as well as out-of-state authority, Sampen v. Dabrowski, 222 Ill.App.3d 918, 165 Ill. Dec. 314, 584 N.E.2d 493, 498 (1991) (concluding that defendant's appraisal report was a professional opinion and subjective estimate and thus not actionable under the Illinois consumer fraud law).
¶ 22. Kessler predicted that our Court would not consider an erroneous legal opinion negligently given by a lawyer as falling within the scope of Vermont's Consumer Fraud Act. 994 F.Supp. at 243. It based this prediction in part on our holding in Winton v. Johnson & Dix Fuel Corp., 147 Vt. 236, 515 A.2d 371 (1986), in *183 which we held that an advertisement for a solar hot water heater violated the Consumer Fraud Act because it emphasized the availability of a Vermont energy tax credit, but failed to state that the credit was available only to resident taxpayers. We recognized "[a]n important distinction . . . between representations of legal opinions and representations of fact relating to the law as it exists." Id. at 240, 515 A.2d at 373. As other courts have found, opinions generally do not give rise to misrepresentation, "because opinions are not facts, and the tort of fraud is grounded upon a defendant's misrepresentation of facts." Id. at 240, 515 A.2d at 374. We explained the difference between opinion and fact as follows: a legal opinion "involves the legal meaning and effect of a statute, court ruling, document, instrument or other source of law," whereas a representation of fact of the law as it exists "involves statements that imply the existence of accurate and readily ascertainable facts that either concern the law or have legal significance, but which are not part of the law themselves." Id. A legal fact, we stated, is "readily ascertainable, . . . not subject to specialized or expert interpretation, and . . . not depend[ent] on judgment or speculation about future events as fundamental to the accuracy of the assertion." Id. at 240-41, 515 A.2d at 374. Ultimately, we concluded that, because the statements in the advertisement "were fashioned as facts, rather than opinions about the application of the law," id. at 241, 515 A.2d at 374, they were actionable under the Consumer Fraud Act. Id. at 243, 515 A.2d at 375.
¶ 23. We now expressly adopt the Kessler court's interpretation, based on Winton. that although certain representations may give rise to a malpractice claim, they are generally not actionable under the Consumer Fraud Act if they are the product of the defendant's "professional judgment based upon his legal knowledge and skill." Kessler, 994 F.Supp. at 243 (quotations and ellipses omitted). A plaintiff cannot simply recast a malpractice claim as a consumer fraud claim. Moreover, for purposes of this rule, we see no meaningful distinction between lawyers and other professionals hired to give a "specialized or expert interpretation" of a matter, as defendant was here. Winton, 147 Vt. at 240, 515 A.2d at 374.
¶ 24. This is not to say that expressions of professional opinion are never actionable as fraud. For example, we have held that expressions of opinion may be so actionable where the defendant misrepresents his opinion as part of a "scheme to defraud" the plaintiff, such as where he intentionally misstates an estimate of cost in order to induce the plaintiff to hire him. Winey v. William E. Dailey, Inc., 161 Vt. 129, 133, 636 A.2d 744, 747 (1993). Furthermore, not all conduct of professionals is necessarily an expression of opinion. See Bridge v. Corning Life Sci., Inc., 997 F.Supp. 551, 553 (D.Vt.1998) (upholding claim under consumer fraud law against doctor where alleged conduct did not involve a matter of judgment, but was rather a question of whether doctor performed the required act  reading a slide showing cancerous cells  at all).
¶ 25. Here, although plaintiff urges us to question defendant's motives in rendering an appraisal so close to the purchase price of the home, the record of undisputed facts makes clear that we must treat this as a fairly routine malpractice case where defendant relied on his "research, education and experience," but nevertheless came to an erroneous value. Plaintiff's theory is not that defendant misrepresented specific facts in reaching his appraised value because plaintiff did not see his factual analysis prior to the closing. Nor is it that defendant *184 misrepresented his opinion; no submitted facts support such a claim. Instead, plaintiff's assertion, based on the facts before the court at summary judgment, is that defendant's opinion was wrong because it arrived at the wrong value. Not every alleged wrong against a consumer is actionable under the Consumer Fraud Act; here, plaintiff fails to state a viable claim under the Act.
Affirmed.
NOTES
[*] We recognize that the situation would arguably be different if the purchase and sale agreement for the house contained a binding appraisal contingency and the appraisal at issue was expected to fulfill that condition. We do not address the result in those circumstances here.