In re Estate of Elizabeth LaFrance, No. 31-2-10 Oecv (Eaton, J., Mar. 4, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

SUPERIOR COURT                                 CIVIL DIVISION
Orange County                                  Docket No. 31-2-10 Oecv


In re Estate of Elizabeth LaFrance


Decision on Administrator's Motion to Dismiss
and Administrator's Motion for Summary Judgment

Appellant Stephen LaFrance seeks a determination in this probate appeal that he should receive the family homestead free and clear of its existing mortgage under the terms of his mother's last will and testament. He also contends that the probate court erred by apportioning certain estate expenses among all the beneficiaries of the estate, and by failing to account for certain rental income received during the pendency of the estate. For the following reasons, the court grants the estate administrator's dispositive motions on each of these questions and affirms the final judgment of the probate court.

The following facts are established by the record.[1] Elizabeth LaFrance died in 2006 and was survived by her three children: Pierre, Stephen, and Jean. At the time of her death, Elizabeth owned the family farm, which consisted of a substantial amount of land in Randolph Center, Vermont.

Elizabeth and her late husband, Morris, started a family-run campground on the farm during the mid-1960s. They operated the campground for many years until Morris died in 1991, at which point Pierre took over as caretaker and manager of the campground.

In her will, Elizabeth left the campground to Pierre. She left the family homestead and about six acres to Stephen, and all the remaining land to Jean. Of all the property, only the homestead was burdened by a mortgage. The primary issue throughout the ensuing probate proceedings was whether Elizabeth meant for her estate to pay off the mortgage before the homestead was given to Stephen.

---

[1] The administrator's motion for summary judgment was supported by affidavits and "a separate, short, and concise statement of the material facts as to which the moving party contends that there is no genuine issue to be tried." V.R.C.P. 56(c)(2). As such, appellant was required to respond by filing a separate statement "of the material facts as to which it is contended that there exists a genuine issue to be tried," along with affidavits or other evidentiary materials demonstrating the existence of a genuine dispute. V.R.C.P. 56(e). Appellant did neither, but rather responded only by asserting summarily that "there are material facts in dispute." Because this is an insufficient response to a properly-supported motion for summary judgment, the court takes the facts asserted by the administrator as established for the purposes of summary judgment. *Webb v. Leclair*, 2007 VT 65, ¶¶ 4–6, 182 Vt. 559.

In pertinent part, Elizabeth directed in her will "that all my just debts (excluding mortgages) and funeral expenses be paid as soon as practicable after my death." She then bequeathed certain personal property to the children along with the aforementioned bequests of real property. She did not mention the real estate mortgage one way or another in the specific bequests of real property. (A more complete copy of the relevant will provisions is attached as Appendix A to this decision.)

After the will was admitted to probate, the administrator sought a license to convey the real property to the three siblings. As part of the license, the administrator requested that the family homestead be conveyed to Stephen subject to the existing mortgage. Stephen opposed this request. After a hearing, the probate court found that Elizabeth had intended for most of her debts to be paid by the administrator as expenses of the estate, but that she specifically excluded the homestead mortgage from the list of debts to be paid. Citing the general rule that the intent of the decedent controls on whether certain debts should be paid by the estate or by the beneficiaries, 14 V.S.A. § 1214, the probate court concluded that the homestead should be transferred to Stephen subject to the existing mortgage.

Stephen attempted to appeal this ruling. The probate court, however, interpreted the notice of appeal as a motion for permission to appeal, and concluded that Stephen had not shown sufficient grounds why an interlocutory appeal should be permitted under the criteria established by Vermont Rule of Appellate Procedure 5. On appeal from the denial of permission to appeal, the superior court agreed that the license to convey real estate was not a final order, and that an interlocutory appeal was not warranted by the circumstances of the case. The superior court accordingly dismissed the appeal and remanded the case to the probate court for further proceedings.

On remand, Stephen relented and accepted the deed to the homestead subject to the mortgage. A final accounting was then held, during which it was found that the estate lacked sufficient funds to pay all of its expenses, which consisted mostly of attorneys' fees. The probate court apportioned the fees between all three beneficiaries, with the shares determined on a pro rata basis by the percentage of total assets that each received under the will.

Stephen now appeals to this court from the final judgment. He raises six issues in his statement of questions, filed June 2010, as follows:

> 1. Does VRCP 5 require permission from the Probate Court to appeal an Order of the Probate Court?

> 2. Should the Last Will & Testament of Elizabeth LaFrance be interpreted to provide that the bequest to Stephen C. LaFrance of the homeplace be transferred free and clear of the mortgage to the Randolph National Bank?

2

3. Should the mortgage to Randolph National Bank be paid out of assets of the Estate of Elizabeth LaFrance?

4. Should the mortgage to Randolph National Bank be paid from the share of the estate decreed to Pierre LaFrance since the proceeds from the mortgage were used for the benefit of the property Pierre LaFrance is inheriting?

5. Should Stephen LaFrance and Jean L. Seavey be required to pay attorney's fees incurred by the Executor in defending questions of his handling of the estate?

6. Should the Executor, Pierre LaFrance, reimburse the Estate for rental income received during the pendency of the Estate?

The present matters before the court are two separate dispositive motions filed by the administrator. In the first motion, the administrator argues that Question #1 should be dismissed under the doctrine of *res judicata* because it was resolved by the prior superior court appeal. In the second motion, the administrator argues that the estate is entitled to judgment as a matter of law on Questions #2 through #6 because there are no genuine issues of material fact for trial, and because (1) the plain language of Elizabeth's will showed that her intent was to bequeath the homestead to Stephen subject to the existing mortgage; (2) the probate statutes allow the court to allocate estate expenses on a pro rata basis; and (3) the question of rental income was properly handled during the final accounting. The court addresses each of these issues seriatim.

Question #1 asks whether Vermont Rule of Appellate Procedure 5 applies to probate appeals. Although the administrator argues that the question should be dismissed as a matter of *res judicata*, the more pressing issue is that the question does not present a live controversy under the circumstances of this appeal. Stephen is not appealing from an interlocutory order, but rather from the final judgment of the probate court, and as such, the provisions of Appellate Rule 5 are not implicated by this appeal. Moreover, to the extent that Stephen is seeking to renew his objections to the terms on which the license to convey real estate was granted, the issue became moot when Stephen accepted the deed subject to the existing mortgage. As such, any decision from this court on this issue would be purely advisory and thus improper. See *In re Unnamed Defendant*, 2011 VT 25 (explaining that the mootness doctrine "limits the authority of the courts to the determination of actual, live controversies between adverse litigants") (citation omitted). For these reasons, the administrator's motion to dismiss Question #1 is granted.

Question #2 asks whether Elizabeth's last will and testament should be interpreted to provide that the family homestead be transferred to Stephen free and clear of the existing mortgage. Stephen appears to argue primarily that his mother would not have intended for him to take the homestead subject to the mortgage, especially because the

3

proceeds from the mortgage benefitted the development of the family campground. In interpreting wills, however, Vermont courts must "look to the words of the will, rather than be guided by plausible statements of probable purpose, made by potential beneficiaries in a proceeding where the testator is unavoidably unable to explain [her] objectives." *In re McCoy's Estate*, 126 Vt. 28, 30 (1966). In other words, the role of the court is to determine whether the language used in the will is plain and unambiguous, and if so, to give effect to that language as the expression of the testator's intent. *In re Davis' Estate*, 126 Vt. 19, 22 (1966).

In this case, Elizabeth's will contained a specific instruction as to the mortgage: the administrator was directed to pay all her "just debts (excluding mortgages) . . . as soon as practicable after my death." In other words, Elizabeth specifically directed her administrator not to pay off the mortgage along with the other estate debts. It is difficult to see how any other interpretation could possibly be given to this language. Nothing contrary is indicated in the specific bequests of real property.

During the probate proceedings, Stephen argued that conflicting instructions were provided in the first sentence of the third paragraph of the will, in which Elizabeth gave "all [her] tangible personal property, excluding, however, securities, cash, money on deposit or evidence of title or debt to my children, OLIVIA JEAN SEAVEY and STEPHEN C. LaFRANCE." Stephen seized on the language of this provision referring to "evidence of title or debt" as evidence that Elizabeth wanted the mortgage to be paid off. It is plain from the overall structure of the will, however, that this sentence referred only to the "tangible personal property," in which context "evidence of title or debt" would refer to stocks, bonds, promissory notes, and other documents of that nature. It is implausible to interpret this sentence as modifying the bequests of real property or otherwise limiting the applicability of the first paragraph, in which Elizabeth specifically instructed her administrator not to pay off the mortgage.

A corollary principle here is provided by statute: "[i]f any assets of the estate are encumbered by mortgage, pledge, lien, or other security interest, the executor or administrator may except as otherwise provided by will pay the encumbrance or any part thereof . . . if it appears to be for the best interest of the estate." 14 V.S.A. § 1214 (emphasis added). In other words, even in cases where the testator has not expressed any desire as to whether the mortgage should be paid off or not, the administrator has discretion to determine whether or not such a payment would be in the best interests of the estate. In this case, there was no occasion for the administrator to exercise his discretion because Elizabeth's will specifically instructed the administrator to pay her "just debts (excluding mortgages)." Given this plain and unambiguous language, the court must conclude that the administrator properly transferred title to Steven subject to the existing mortgage.

Question #3 asks whether the mortgage should be paid out of the assets of the estate. As the court understands it, this question is not duplicative because it is not a matter of interpretation but rather an appeal to equity: whether it is fair for Stephen to receive the family homestead subject to a mortgage whose proceeds benefitted the family

4

campground rather than the house. One of the limitations on the court's power when interpreting or enforcing wills, however, is that it cannot rely on its own sense of what should have happened or its own assessment of the equities. Rather, the role of the court is to honor the wishes of the testator by giving effect to her intent as it is expressed by the plain language of her will. *Eckstein v. Estate of Dunn*, 174 Vt. 575, 578 (2002) (citation omitted). Here, the will plainly expresses the testator's intent that her administrator pay all her "just debts (excluding mortgages)." It was for Elizabeth to decide whether this was fair or not. Because she clearly expressed her determination that it was, the court must effectuate that intent.

Question #4 asks whether the mortgage should be paid out of Pierre's share of the estate, because the proceeds from the mortgage benefitted the campground. Again, for the reasons expressed above, the court is not at liberty to rewrite the terms of the will or to substitute its own judgment for that of the testator.

Question #5 asks whether Stephen and Jean should be required to share the attorneys' fees incurred by the administrator during the pendency of the estate. It appears from the record that the challenge here is not to the reasonableness of the fees that were awarded by the court, but rather to the legal question of whether the expenses should have been shared by all the beneficiaries under the circumstances of this case. In particular, appellant appears to suggest that the fees were incurred by the administrator "in defending questions of his handling of the estate".

It is true that apportionment of fees would not be appropriate if the administrator had incurred personal legal fees in defending his actions as administrator against allegations of malfeasance or other wrongdoing. The facts established for purposes of summary judgment do not support the conclusion that the administrator charged personal attorney fees to the estate, however. Rather, the fees were incurred as part of the resolution of a legitimate question arising out of the estate: how the will should be interpreted and effectuated. It is fair for all of the beneficiaries to share the expense of resolving legal issues pertaining to the administration of the estate. Here, the attorneys' fees were properly characterized as an expense of the estate.

Estates must pay any attorneys fees and expenses before any distribution is made to the beneficiaries. 14 V.S.A. § 1205(a)(1). In cases where, as here, partial distributions of estate assets are made prior to the final accounting, it sometimes happens that the remaining estate assets are "insufficient to satisfy the ultimate expenses." In those situations, "those persons having received [partial] distributions shall be liable to repay the executor or administrator on a pro rata basis." 14 V.S.A. § 1743. Here, each of the beneficiaries received a partial distribution in the form of real estate prior to the final accounting. The probate court then found that the estate assets were insufficient to pay the remaining expenses, and apportioned those expenses accordingly. This was proper under § 1743. Because there is no genuine issue on appeal as to the sufficiency of the estate assets or the calculation of the pro rata shares, the apportionment of expenses is affirmed.

5

Question #6 asks whether the administrator should "reimburse the estate for rental income received during the pendency of the estate." This appears to question whether the probate court properly accounted for the rental income received by the estate from the family campground. The facts established for purposes of summary judgment show that the campground paid $62,734.00 in rent to the estate during the pendency of the estate, and that these amounts were included in the accounting. Stephen has not identified any genuine issue of material fact with respect to this amount or offered any evidence to support the existence of a factual dispute. As a result, the court must conclude that there is no issue here for trial: the campground rent was properly accounted for in the final accounting.

The administrator has asked the court to expand the issues on appeal to include the question of whether Stephen should have paid rent to the estate during the time he spent living in the homestead after his mother's death and before he accepted the deed to the house. This court lacks jurisdiction to consider this question because the administrator did not file a cross appeal from the final accounting of the probate court.[2] *Huddleston v. University of Vermont*, 168 Vt. 249, 255–56 (1998).

Finally, Stephen has argued that summary judgment is not an available procedure in probate appeals because he is entitled to a trial *de novo* on the issues presented by the statement of questions. *Whitton v. Scott*, 120 Vt. 452, 457 (1958). It is true that probate appeals are *de novo* appeals in which there is a jury trial right, but is well established that the entry of summary judgment does not infringe upon the right to jury trial when there is no genuine issue of fact and either party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3); *In re Deer View LLC Subdivision Permit*, 2009 VT 20, ¶ 3, 186 Vt. 536 (mem.). Moreover, ample authority supports the applicability of summary-judgment procedures to probate appeals. See V.R.C.P. 72(f) (rules of civil procedure apply to probate appeals); *In re Estate of Price*, 2006 VT 62, ¶ 9, 180 Vt. 548 (mem.) (entering summary judgment for appellee in probate appeal).

After reviewing the established facts in the light most favorable to the non-moving party, the court concludes that there are no genuine issues for trial, and that the estate administrator is entitled to judgment as a matter of law on all the questions presented in the appeal. The motion for summary judgment is accordingly granted, and the final judgment of the probate court is affirmed.

---

[2] It is true, as the administrator argues, that the recent decision in *Estate of Doran*, 2010 VT 13, suggests that the superior court should consider the issues fairly raised in a probate appeal rather than limit itself to the statement of questions. *Estate of Doran*, however, involved the situation where the appellant was seeking to present an argument related to, but not expressly stated in, her statement of questions. There is nothing in *Doran* that suggests a departure from the general rule that an appellee must file a cross appeal in order to obtain review of a claim of error.

6

**ORDER**

Appellee's Motion for Partial Dismissal and Partial Summary Judgment (MPR #1), filed September 10, 2010, is ***granted***. The final order of the probate court is ***affirmed***.

Dated at Chelsea, Vermont this _____ day of March, 2010.

_____
Hon. Harold E. Eaton, Jr.
Superior Court Judge