STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 136-9-14 Vtec |
|---|---|
| 38 Thasha Lane Dev. Water & Sewer Fees Denial | DECISION ON MOTION |

## Decision on Motion for Summary Judgment

The matter presently before the Court relates to a proposed development at 38 Thasha Lane in the Village of Essex Junction (Village). Green Meadows Apartments, LLC (Applicant) seeks to demolish five buildings consisting of 40 apartment units and construct three buildings consisting of 90 apartment units (the Project), 40 of which will replace apartment units previously existing on the Property. Although 40 of the new apartment units will connect to the Village's sewer infrastructure in the same location as the current connections for the 40 apartment units to be demolished, the Village assessed Applicant sewer fees for all 90 apartments to be constructed, amounting to $90,000. Applicant paid the entire $90,000 in fees, but appealed the fees to the Trustees of the Village in their capacity as the Board of Sewer Commissioners. After the Trustees of the Village denied the appeal, Applicant timely appealed the decision to this Court, filing a Statement of Questions consisting of two Questions. Both Applicant and the Village now move for summary judgment, arguing that there are no material facts in dispute and that they are entitled to a judgment in their favor as a matter of law.

Applicant is represented by Carl H. Lisman, Esq. The Village of Essex is represented by David A. Barra, Esq.

## Factual Background

For the sole purpose of putting the pending motion into context the Court recites the following facts which it understands to be undisputed based on the Joint Statement of Facts, filed January 22, 2015:

1

1.	Green Meadows Apartments, LLC (Applicant) owns land and apartment buildings at 38 Thasha Lane in the Village of Essex Junction (Property).

2.	The Property previously consisted of 14 two-story apartment buildings, each of which contained eight apartments units served by municipal water and sewer.

3.	On November 21, 2013 Applicant received approval from the Village of Essex Junction's Planning Commission to demolish the existing 14 two-story apartment buildings and to construct 10 three-story apartment buildings on the Property, each of which will consist of 30 apartment units (the Project).  The Project will include the demolition of 112 apartment units and the construction of 300 apartment units over several phases.  The current phase of the Project includes the demolition of 40 apartment units and the construction of 90 apartment units in substantially the same location.

4.	Of the 90 proposed apartment units, 40 will connect to the Village's sewer infrastructure at the same location as the existing connections for the 40 units to be demolished, using new hardware.

5.	The discharge into the sewer system from the new apartment units will not differ substantially from the discharge into the sewer system from the existing apartments; thus, there is no new or additional burden on the Village.

6.	The Village assessed a fee against Applicant to connect all 90 newly constructed apartment units to the municipal sewer, at a total of $90,000.

7.	The Village has assessed sewer connection fees against 8 construction projects that have added residential units since 2002.

- In 2002, the Village assessed a fee of $9,200 for the connection of 77 new residential units replacing a restaurant and motel;

- In 2003 the Village assessed a fee of $1,600 for the connection of 30 new residential units replacing 1 unit;

- In 2004 the Village assessed a fee of $2,800 for the connection of 7 new residential units added to an existing house;

- In 2008 the Village assessed a fee of $14,000 for the connection of 35 new residential units replacing 1 unit;

2

- In 2009 the Village assessed a fee of $24,000 for the connection of 24 new residential units replacing 3 units;

- In 2012 the Village assessed a fee of $36,000 for the connection of 36 new residential units replacing 3 units and $3,000 for the connection of 3 new residential units replacing 1 unit; and

- In 2013 the Village assessed a fee of $17,000 for the connection of 17 new residential units replacing 2 units.

8. Applicant paid this fee and then appealed the fees for the 40 apartment units replacing existing units to the Trustees of the Village in their capacity as the Board of Sewer Commissioners, and then to this Court.

## Discussion

In the pending appeal, Applicant raises two Questions regarding the sewer service charges imposed by the Village for the connection of 40 newly constructed apartment units. By its motion, Applicant seeks summary judgment, asking the Court to hold that the Village is not entitled to assess a connection fee for 40 of the 90 apartment units that will be constructed on the Property because they will rely on the existing sewer connections of 40 apartment units that will be demolished as part of the Project. The Village also seeks summary judgment, asking the Court to hold that it properly imposed a sewer connection fee for all 90 apartment units, including the 40 units that will rely on existing sewer connections, because these are "new units" and therefore subject to the connection fee under the Village of Essex Junction Land Development Code (the Code).

We will grant summary judgment for a moving party if that party shows that no material facts are in dispute and that the party is entitled to judgment as a matter of law. V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). The moving party has the burden of proof, and the Court must treat each fact alleged within the movants statement of material facts as "admitted unless controverted" by a statement filed by the opposing party that identifies the facts it disputes. V.R.C.P. 56(c)(2); Webb v. Leclair, 2007 VT 65, ¶¶ 2, 6, 182 Vt. 559 (mem.). When considering cross-motions for summary judgment, the court considers each motion individually and gives the opposing party

3

the benefit of all reasonable doubts and inferences.  City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

In its motion, Applicant argues that although the Code does not expressly address an applicant's liability for sewer connection fees for replacing pre-existing units, the fee per "new unit" does not apply to the replacement of existing units.  (Applicant's Mot. for Summ. J. at 5, filed Jan. 22, 2015).  Applicant further argues that by its plain language, the Code only assesses fees for the connection of additional units.  They therefore contend that because 40 of the 90 proposed new units will rely on existing connections, no fee is required for those 40 units.  Conversely, the Village argues that by its plain language, the Code assesses a connection fee for each new unit and does not provide an exemption for the replacement of existing units.  (Village's Mot. for Summ. J. at 2, filed Jan. 23, 2015).  They contend that all 90 proposed units are new, in that the 40 existing units will be destroyed and replaced with distinct and newly constructed units.

In interpreting zoning ordinances, we apply familiar rules of statutory construction.  In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262.  First, we "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance."  Id. (citations omitted).  If there is no plain meaning, we will "attempt to discern the intent from other sources without being limited by an isolated sentence."  In re Stowe Club Highlands, 164 Vt. 272, 280 (1995).  In construing statutory or ordinance language, our "paramount goal" is to implement the intent of its drafters.  Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61.  We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense."  In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (quotations omitted); see also In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)) ("Our goal in interpreting [a zoning regulation], like a statute, 'is to give effect to the legislative intent.'").

Where an ordinance is ambiguous, we will sustain the municipal panel's interpretation "absent compelling indication of error."  See In re Duncan, 155 Vt. 402, 408 (1990) (holding that an administrative agency's interpretation of its own ambiguous statute is entitled to deference when it is without clear error) (citing Vermont Camping Ass'n v. Department of Employment &

4

Training, 145 Vt. 630, 633 (1985)). The Court will not, however, adopt an interpretation that has not been consistently applied. See In re Champlain College Maple Street Dormitory, 2009 VT 55, ¶ 10, 186 Vt. 313, 319 (deferring to the administrative panel's construction where "applied consistently"). Finally, because zoning regulations limit common law property rights, we resolve any uncertainty in favor of the property owner. Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22.

Chapter 11 of the Code establishes the Village's Sewer Regulations. Appendix B to that Chapter provides that each "new unit" shall be assessed a fee of $1,000 to connect to the municipal sewer system. Land Development Code, Appendix B at 4. Both parties acknowledge the absence of a definition for the term "new unit" and encourage the Court to apply the "ordinary meaning" of the term. The parties do not agree, however, on the ordinary meaning of the term. Applicant argues that in the context of housing units in a municipality, a "new unit" means a unit which adds to the available housing in the area and does not include a unit which replaces a pre-existing unit. (Applicant's Mot. for Summ. J. at 5, filed Jan. 22, 2015). The Village, on the other hand, argues that the term should be defined by its common usage as defined in standard dictionaries. (Village's Motion for Summary Judgment at 2, filed Jan. 23, 2015).

In support of their interpretation, the Village offers § 201(A) of the Code, which provides standards for the interpretation of words not defined in the Code itself. These standards provide that words "shall be reviewed in the context of the purpose or intent Sections of this Code and the Official Plan as adopted," and "through consultation with standard planning textbooks." Land Development Code § 201(A)(1), (2). The Code also provides that "[w]ords without a unique planning definition shall be deemed to be common usage as defined in standard dictionaries." Id. at § 201(A)(4); see also Franks v. Town of Essex, 2013 VT 84, ¶ 8, 194 Vt. 595 ("Words that are not defined within a statute are given their plain and ordinary meaning, which may be obtained by resorting to dictionary definitions.").

Because the term "new unit" is without a unique planning definition, we define it by its common usage. "New" generally means having recently come into existence and "unit" generally means a single thing that is a constituent of a whole. See Webster's New College

5

Dictionary 753, 1235 (3d ed. 2005). Based on these definitions, the Court is inclined to agree with the Village that the 40 replacement units fit the definition of "new unit." As stated above, however, if the application of the plain language would lead to irrational results, the Court looks to other sources to ascertain legislative intent. See In re UVM Certificate of Appropriateness, No. 90-7-12 slip. op at 5 (Vt. Super. Ct. Envtl. Div. Feb. 26, 2013) (Walsh, J). This includes the administering agency's interpretation of the ordinance. Id.

It is unclear from the data provided by the parties that the Village has consistently interpreted the Code to include all new units rather than new connections. According to the data provided by the parties, the Village has assessed a sewer connection fee for new construction without reduction or credit for existing units in eight instances since 2002. The four most recent of these instances, occurring once in 2009, twice in 2012, and once in 2013, assess a sewer connection fee of $1,000 per new unit, regardless of the number of new units that are replacing existing units with existing connection. This application is consistent with the Village's interpretation of the Code, if not somewhat irrational in that it charges $1,000 for the connection of both newly constructed units and units replacing existing units with existing sewer connections.

The four remaining sewer connection fees, however, are not consistent with the Village's interpretation. In each instance, the Village assessed sewer connection fees varying from $40 to $120 per newly constructed unit. In 2002, a restaurant and motel was replaced with 77 units and was assessed a fee of $9,200 for sewer connections, at $120 per connection. In 2003, one unit was replaced with 30 units and was assessed a fee of $1,600 for sewer connections, at $54 per connection. In 2004, 7 units were added to an existing unit and was assessed a fee of $2,800 for sewer connections, at $114 per connection. Finally, in 2008, one unit was replaced with 35 units and was assessed a fee of $14,000 for sewer connections, at $40 per connection. The Village offers no explanation for these figures, which can hardly be viewed as consistent interpretation of the Code, and which contribute to the uncertainty around the proper application of the Code.

As stated above, we must consider the intent and purpose of the connection fee. By its very definition the sewer connection fee is a fee to connect to the municipal sewer system. If

6

such a connection already exists in the same location that will serve a new unit and no new connection is required it goes against the plain meaning of the words used to charge a connection fee.  The Court must also resolve any uncertainty in favor of the property owner.  Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22.  We therefore conclude that Applicant is not required to pay a sewer connection fee for units that involve no new sewer connection.  The Court does not defer to the Village's current interpretation of the sewer connection fee provision.  Important to the Court's conclusion are the facts that the Village has only recently begun to apply the Code in this manner and because the Village's interpretation is irrational as the Village does not incur a new or additional burden when an existing connection is reused.

As the Applicant is entitled to judgment as a matter of law, its motion for summary judgment is **GRANTED**, and the Village's motion for summary judgment is **DENIED**.  The matter is therefore **REMANDED** to the Trustees of the Village for an appropriate refund consistent with this decision.

A Judgment Order accompanies this Decision.  This concludes the matter before the Court.

Electronically signed on August 28, 2015 at 11:55 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division